STEVEN F. GRUEL (CSBN 213148)
655 Montgomery Street, Suite 1700
San Francisco, California 94111
Telephone:  (415) 989-1253
Facsimile:   (415) 576-1442
attystevengruel@sbcglobal.net

Attorney for SHOPPER'S CORNER, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SHOPPER'S CORNER, INC., a California Corporation,<br><br>                Plaintiff,<br><br>                v.<br><br>HUSSMANN CORPORATION, a Missouri Corporation,<br><br>                Defendant. | Case No.: C07 06437 RS<br><br>**Declaration of Steven F. Gruel in Support of Plaintiff Shopper's Corner, Inc.'s Opposition to Defendant Hussmann Corporation's Motion to Strike**<br><br>Date:  May 28, 2008<br>Time:  9:30 a.m.<br>Courtroom:  4<br><br>Trial Date: None Set |

1. I represent Plaintiff Shopper's Corner, Inc. in the above captioned case and make this declaration in Support of Shopper's Corner, Inc.'s Opposition to Defendant Hussman Corporation's Motion to Strike.

2. Attached hereto as Exhibit 1 is a true and correct copy of the parties' contract in this matter.

0

I declare under penalty of perjury that the foregoing is true and correct to the best of my personal knowledge. Executed this 7TH day of May 2008, at San Francisco, California.

____/s/_____
STEVEN F. GRUEL

Declaration of Steven F. Gruel in Support of Plaintiff
Shopper's Corner, Inc.'s Opposition to Defendant Hussmann

# EXHIBIT 1

# HUSSMANN CORPORATION
A Williams Company

HUSSMANN CORPORATION
48438 Milmont Avenue
Fremont, CA 94538-7326
License No. 304926

Sold To: Shoppers Corner
622 Soquel Avenue
Santa Cruz, CA 95062

Job: Same As Sold To

Salesman: Mr. Greg Ranieri

Date: October 7, 1998

## QUOTATION SUMMARY AND CONTRACT:

Provide Hussmann equipment and installation as per quotation dated October 7, 1998.

Equipment: .................................................. $234,430.00

Installation: ................................................. 78,586.00

Estimated Freight: ....................................... 12,900.00

Total: .......................................................... $325,916.00*

*Add applicable sales tax.

## SPECIAL CONDITIONS:

When signed by BUYER, this document shall be an offer from BUYER to HUSSMANN CORPORATION (referred to herein as "HUSSMANN" and/or as "Seller"). When accepted and signed by HUSSMANN, this document shall become a legally binding CONTRACT. Said CONTRACT includes all of the contract terms and conditions stated on this document, the __20__ page quotation dated __October 7, 1998__, and the attached Rider Contract Terms and Conditions. OTHER THAN THE LIMITED WARRANTY STATED IN THIS AGREEMENT, HUSSMANN CORPORATION MAKES NO WARRANTIES, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OF THE JOB OR ANY LABOR, EQUIPMENT OR MATERIALS PROVIDED HEREIN.

SELLER
HUSSMANN CORPORATION
Accepted _[signature]_
Title _General Mgr_  12/1/98

BUYER
SHOPPERS CORNER
By _[signature]_
Title _Owner_

FORM KSM 1.5 (Rev. 300)

# HUSSMANN CORPORATION
A Whitman Company

HUSSMANN CORPORATION
48438 Milmont Avenue
Fremont, CA 94538-7326
License No. 304926

| | | | |
|---|---|---|---|
| **Sold To:** | Shoppers Corner<br>622 Soquel Avenue<br>Santa Cruz, CA 95062 | **Job:** | Same As Sold To |
| **Salesman:** | Mr. Greg Ranieri | **Date:** | October 7, 1998 |

## QUOTATION SUMMARY AND CONTRACT:

Provide Hussmann equipment and installation as per quotation dated October 7, 1998.

Equipment: ................................................................. $234,430.00

Installation: ................................................................ 78,586.00

Estimated Freight: ..................................................... 12,900.00

Total: ........................................................................ $325,916.00*

*Add applicable sales tax.

## SPECIAL CONDITIONS:

When signed by BUYER, this document shall be an offer from BUYER to HUSSMANN CORPORATION (referred to herein as "HUSSMANN" and/or as "Seller"). When accepted and signed by HUSSMANN, this document shall become a legally binding CONTRACT. Said CONTRACT includes all of the contract terms and conditions stated on this document, the __20__ page quotation dated __October 7, 1998__, and the attached Rider Contract Terms and Conditions. OTHER THAN THE LIMITED WARRANTY STATED IN THIS AGREEMENT, HUSSMANN CORPORATION MAKES NO WARRANTIES, EXPRESS OR IMPLIED, AS TO THE MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OF THE JOB OR ANY LABOR, EQUIPMENT OR MATERIALS PROVIDED HEREIN.

SELLER
HUSSMANN CORPORATION

Accepted _____

Title _____

BUYER
SHOPPERS CORNER

By: _[signature]_

Title _OWNER_

_[signature]_

FORM REM 1.01 (Rev. 7/96)

CONTRACT TERMS AND CONDITIONS

1. THE LIABILITY OF HUSSMANN CORPORATION ("SELLER") ARISING OUT OF OR IN ANY WAY CONNECTED WITH EITHER THE JOB, OR THE PROVISION OF LABOR, OR THE DESIGN, MANUFACTURE, SALE, ERECTION OR USE OF EQUIPMENT AND/OR MATERIALS HEREIN, WHETHER UNDER THIS LIMITED WARRANTY OR OTHERWISE, SHALL NOT EXCEED THE COST OF CORRECTING DEFECTS IN THE EQUIPMENT AND/OR MATERIALS, F.O.B. THE FACTORY OF ORIGIN, THAT ARE REPORTED BY BUYER TO SELLER DURING THE LIMITED WARRANTY PERIOD STATED HEREIN. IN NO EVENT SHALL ANY CLAIM BE MADE BY BUYER FOR, NOR SHALL SELLER BE LIABLE FOR, EITHER CONSEQUENTIAL DAMAGES OR LIQUIDATED DAMAGES.

2. SELLER's limited warranty to BUYER is that for a period of one (1) calendar year from the start date of said limited warranty, SELLER shall repair or replace, F.O.B. point of manufacture, any equipment and/or materials manufactured by SELLER and furnished to the Job, provided that the warranty claim for said equipment and/or materials is reported to, and found by, SELLER (HUSSMANN) to be defective during said one (1) calendar year warranty period; provided, further however, that after ninety (90) days from the start date of said limited warranty, BUYER shall be liable to SELLER (HUSSMANN) for all labor charges incurred with regard to said limited warranty. SELLER's limited warranty starts to run on the earlier date (the "start date") of either a) initial operation or first beneficial use by BUYER of the Job or b) SELLER's completion and BUYER's acceptance of the Job. If SELLER is a subcontractor, then in no event shall the duration of said limited warranty exceed the shorter of a) the limited warranty period stated hereinabove or b) eighteen (18) calendar months from the calendar date of first delivery by SELLER of any equipment and/or materials to the Job. Any warranty adjustments made by SELLER shall not extend the initial limited warranty period set forth herein; the warranty period for all adjustments shall terminate at the end of the initial warranty period. Any expenses incurred by BUYER in replacing or repairing or returning any equipment or materials shall not be reimbursed by SELLER. Said limited warranty shall be void if equipment has been subject to negligence, abuses, misuse, low voltage, corrosive chemicals, excessive pressure, accident, outward damage, or hidden damage while in transit, or if operated contrary to the manufacturer's or SELLER's recommendations, or if the serial number has been altered, defaced or removed, nor shall SELLER be liable for (a) damages when services are performed which are not authorized by SELLER, or (b) parts other than genuine manufacturer's or SELLER's parts are used for repairs.

3. Equipment and materials not manufactured by SELLER are warranted by SELLER to BUYER only to the extent of, and any warranties are specifically limited to, that portion of the original manufacturer's warranty that SELLER is permitted by said manufacturer to assign to BUYER. While said other manufacturer's warranty may give BUYER certain rights, in no event shall any other manufacturer's warranty extend or enlarge SELLER's limited warranty to BUYER herein.

4. This proposal is voidable by SELLER unless signed by BUYER and physically delivered to SELLER within thirty (30) calendar days from the date of the proposal.

5. Due to the fluctuating prices of equipment and materials SELLER's final prices to BUYER for materials, other equipment and SELLER manufactured equipment shall be at prices in effect at date of delivery of shipment to SELLER from supply source. SELLER shall document any changes in SELLER's costs and only SELLER's increased costs shall be added to the price of the final billing. As used herein the word "materials" specifically includes, but is not limited to, copper and other metals as well as Freon and other gases. Labor costs are based on union contracts now in effect. Labor performed after expiration of labor contracts is subject to increase if made necessary by increased labor costs under new labor contracts.

6. Notwithstanding any other term or condition herein, BUYER agrees, upon receipt from SELLER of a notice of completion of the Job, to inspect the Job in the presence of SELLER's representative, and to either (a) accept the Job in its entirety by executing SELLER's Job Acceptance Form, or (b) accepting the Job in part and specifically identifying, in writing, on SELLER's Job Acceptance Form, any exceptions to acceptance. BUYER agrees to reinspect any and all exceptions upon receipt of further notice of completion of SELLER. The initial acceptance inspection shall take place within ten (10) days from date of SELLER's notice of completion of Job. Any subsequent inspection shall take place within five (5) days from subsequent notices of completion of originally excepted items. BUYER's failure to cooperate and complete any of said inspections within the required time limits shall constitute complete acceptance of the Job.

7. SELLER shall not be liable for any loss or damages of any kind whatsoever caused by obsolescence, delays, Acts of God, acts of war, civil insurrection or riot, strikes, violence, trespassing of premises by third parties, lockouts or other labor troubles, fire, action of the elements, transportation delays, delays in receipt of equipment and/or materials or any other causes beyond the reasonable control of SELLER. SELLER shall not be liable for physical or chemical effects of water or atmospheric contaminates on equipment or materials.

8. If any action or lawsuit is brought to enforce or interpret the provisions of this Contract, the prevailing party shall be entitled to reasonable attorneys' fees (including expenses, expert witness fees and other costs), which may be set by the court in the same action or in a separate action brought for that purpose, in addition to any other relief to which that party may be entitled.

9. Where the erection of equipment specified herein is part of this AGREEMENT said erection shall be performed only during normal working hours unless expressly stated otherwise herein.

10. All plans, drawings, memoranda, ideas and information furnished by SELLER shall remain its property and shall be considered the trade secrets of SELLER, received by BUYER in trust and confidence for the sole purpose of erecting and operating the Job. Following BUYER approval of a fixture floor plan, this AGREEMENT is inclusive of one (1) complete set of plans, if required, and the necessary duplicates. An additional charge to BUYER for changes after the approval of the original floor plan will be made at the prevailing time and materials rates in the industry.

11. BUYER shall keep said equipment and materials free of all taxes and encumbrances, shall not remove said equipment and materials from the premises without permission of SELLER, and shall not assign or transfer any interest in said equipment and materials or in this AGREEMENT, without the prior written consent of SELLER, until all payments due SELLER have been made.

12. If not otherwise specified, standard terms will include a twenty percent (20%) cash down payment due upon the execution of this AGREEMENT. Progress payments of ninety percent (90%) of the labor expended and equipment and materials delivered during the previous month will be due the tenth (10th) day of each following month. If the Job, or completion of the Job, is delayed more than two (2) months for any reason beyond the control of the SELLER, then ninety-eight percent (98%) of the value of labor, equipment and material expended will become payable at this time. If delivery of equipment or materials to the Job site is delayed by BUYER, then BUYER shall take delivery and provide suitable temporary storage.

13. BUYER will provide any and all necessary access platforms, catwalks, or other means to safely service the equipment in compliance with OSHA or state industrial safety regulations. Said platforms to be installed by BUYER at BUYER's expense prior to initial performance of any labor, unless otherwise agreed.

14. If sales tax rates change during the installation of the equipment sales tax will be charged according to California Board of Equalization rules in effect at the time of the completion of the Job.

15. All prices are F.O.B. factory, are subject to change without notice and will be those in effect on date of shipment. BUYER shall pay all freight charges. Freight charges quoted are estimates only, unless specifically stated as firm price. SELLER shall retain any allowance, discount or reduction in freight charges for SELLER'S services in connection with its arrangement of transportation, such as tendering a volume of freight over a given time period. Changes in delivery date beyond SELLER's control, made less than thirty (30) calendar days prior to confirmed shipping date may be subject to additional storage and/or handling charges. Handling, freight and/or restocking charges may be necessary in the event of cancellation of all or any part of this Contract.

REM 70796 (revised)